UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

THERESE LALUMIERE,

                          Plaintiff,

     v.

WILLOW SPRINGS CARE, INC., a
Washington corporation; JENNIFER
NEWMAN, and her marital property;
AARON HILL, and his marital
property; and TAMARA BERUMEN,
and her marital property,

                       Defendants.

NO: 1:16-CV-3133-RMP

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT is Defendants' Joint Motion for Summary Judgment, ECF No. 27. A telephonic hearing was held before the Court on October 10, 2017. Laura Morse appeared on behalf of Defendants. Favian Valencia appeared on behalf of Plaintiff. The Court has considered the parties' arguments, reviewed the parties' exhibits, and is fully informed.

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

# BACKGROUND

Plaintiff Therese Lalumiere brings this suit alleging violations of the Family Medical Leave Act, 29 U.S.C. § 2615(a) over which the Court exercises federal question jurisdiction pursuant to 28 U.S.C. § 1331, and state law claims[1] over which the Court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Finding that Ms. Lalumiere's federal claims should be dismissed, the Court could remand all of Ms. Lalumiere's state law claims to the state court, but instead exercises supplemental jurisdiction over the state law claims because the facts for all of the claims are intertwined.

From 2010 to 2015, Ms. Lalumiere worked as a Licensed Practical Nurse at Willow Springs Care, Inc., a skilled nursing care facility in Yakima, Washington, and a defendant in this matter. In 2015, at the time of the incidents at issue in this matter, Defendant Tamara Berumen was the Director of Nursing at Willow Springs and one of Ms. Lalumiere's supervisors. ECF No. 28, ¶ 2.2. Defendant Jennifer Newman was the charge nurse responsible for supervising the nursing staff during Ms. Lalumiere's weekend shifts. *Id.* ¶ 3.2. Defendant Aaron Hill was the Willow Springs Administrator in Training and worked with Ms. Berumen. *Id.* ¶ 4.3.

---

[1] Ms. Lalumiere's state law claims include intentional infliction of emotional distress, whistleblower retaliation, wrongful termination by constructive discharge in violation of public policy, false imprisonment, and negligent hiring. However, Ms. Lalumiere bundles the claims and arguments together.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

*Ms. Lalumiere's Reports of Employee Misconduct*

Between January and April of 2015, Ms. Lalumiere reported to Ms. Berumen about medication distribution infractions by Dianne Odman, one of her coworkers at Willow Springs.  ECF No. 1-2 at 4-5.  Ms. Lalumiere asserts that she first verbally reported Ms. Odman's infractions to Ms. Berumen on January 12, 2015.  ECF No. 1-2, ¶ 3.5; ECF No. 33-1 at 19.  Ms. Lalumiere also wrote a letter to Ms. Berumen voicing her concern about Ms. Odman's work practices on March 20, 2015.  ECF No. 33-6 at 2.

On April 2, 2015, Ms. Lalumiere made an anonymous report to the Washington Department of Social and Health Services (DSHS) about delayed medication distributions at Defendant Willow Springs, identifying Dianne Odman as the nurse responsible for the infractions.  ECF No. 28, ¶ 40; ECF No. 45, ¶ 40.  DSHS visited Willow Springs on April 18, 2015, to investigate Ms. Lalumiere's April 2 allegations.  ECF No. 28, ¶ 50.  As a result of the investigation, DSHS cited Defendant Willow Springs on April 28, 2015, for failing to administer medications in a timely manner.  *Id.* ¶ 54-55; ECF No. 33-6 at 14-17.  To address the issue, DSHS required Defendant Willow Springs to submit a plan of correction, but DSHS did not impose any other penalties on Willow Springs as a result of the April 18, 2015, investigation.  *Id.*  Although DSHS's investigation of Ms. Lalumiere's report took place before Ms. Lalumiere left her position at Willow Springs, the DSHS

response citing Willow Springs for failing to administer medications in a timely manner was issued several days after Ms. Lalumiere left her job at Willow Springs.

*Ms. Lalumiere's 2015 Work Performance Citations*

Several times between January and March of 2015, Ms. Lalumiere received citations from her supervisors at Willow Springs regarding issues with her work performance.[2]  *See, e.g.*, ECF No. 33-5, at 29.  Alleging that many of these citations were without basis, Ms. Lalumiere emphasizes several times in her pleadings that Ms. Newman repeatedly and falsely accused her of misconduct.  ECF No. 44-2 at 3, 4, 5, 9, 10.

On January 4, 2015, Ms. Newman cited Ms. Lalumiere for failing to give a patient insulin on January 3, 2015.  ECF No. 28, ¶ 13.6.  On January 5, 2015, Ms. Lalumiere met with her Willow Springs supervisors, Ms. Berumen and Ms. Newman, to discuss the January 3 incident and to address any existing issues.  ECF No. 33-1, at 18-19.

On January 12, 2015, Ms. Berumen texted Ms. Lalumiere and notified her that Ms. Berumen had received several complaints about Ms. Lalumiere "regarding resident care and slander against other nurses."  *Id.* at 33.  On January 15, 2015, Ms. Berumen wrote a Willow Springs Corrective Action Report for Ms. Lalumiere's work performance, citing Ms. Lalumiere's failure to assess a resident's changed

---

[2] Ms. Newman was out on maternity leave from January 31 to February 22, and no negative incidents or infractions against Ms. Lalumiere were documented during February.

condition on January 9, 2015; her failure to change a resident's leaking catheter on January 9, 2015; her unprofessional conversations about other coworkers; and her inappropriate conversation with a resident's family members after the family had lodged a complaint. ECF No. 33-5 at 29. Ms. Lalumiere disagreed with the statements in the report, and she noted that she felt her coworkers were "talking about [her] and making false statements." *Id.*

Ms. Lalumiere states that citations at Willow Springs were usually issued on the same day that an error occurred, and she states that the January 15 citation for issues that had happened on January 9 and 10, 2015, led her "to believe that Ms. Newman was getting back at [Ms. Lalumiere] for reporting [Ms. Newman] and Ms. Odman to [Ms. Berumen]" on January 12, 2015. ECF No. 44-2, ¶ 10. However, Ms. Berumen, rather than Ms. Newman, issued the January 15 Corrective Action Report, and Ms. Berumen asserts that she had a legitimate reason for the delay in issuing it. ECF No. 33-3 at 15. Ms. Berumen had received a letter from a resident's son, dated January 13, 2015, regarding his concerns about Ms. Lalumiere's care of his mother, a Willow Springs Resident, and Ms. Berumen included the son's concerns in the January 15 Corrective Action Report. ECF No. 33-5 at 26-27; ECF No. 33-5 at 29.

Citations against Ms. Lalumiere continued. On March 15, 2015, Ms. Newman cited Ms. Lalumiere for failing to administer a medication and improperly documenting its administration. ECF No. 28, ¶ 25. On March 28, 2015, Ms.

Newman sent Ms. Lalumiere home early from her shift after Ms. Newman and Ms. Lalumiere had a disagreement. *Id.* ¶¶ 33-34; ECF No. 33-1 at 29. On March 29, 2015, Ms. Newman wrote a Medication Error Report documenting Ms. Lalumiere's failure to administer a patient's medication. ECF No. 44-2 at 17.

Ms. Lalumiere met with Defendants Berumen, Newman, and Hill on March 30, 2015, to discuss Ms. Lalumiere's work performance. ECF No. 33-1, at 18-19; *id.* at 39-40; ECF No. 33-3 at 27. At the March 30 meeting, Ms. Lalumiere alleges that Defendants asked her to resign and that Defendants falsely accused her of looking at confidential documents. ECF No. 33-1 at 39-40. Ms. Lalumiere did not resign following the March 30 meeting, and Defendants argue that they did not pursue any disciplinary action in response to the allegations about confidential documents.

On April 11, 2015, Ms. Lalumiere asserts that Ms. Newman falsely accused Ms. Lalumiere of pre-popping medications. ECF No. 44-2 at 10; ECF No. 28, ¶¶ 42, 48. Ms. Newman never issued a written citation for this infraction.

*Ms. Lalumiere's Documentation of Harassment*

In January of 2015, Ms. Lalumiere complained to Ms. Berumen that she was being "verbally harassed" and given "the cold shoulder" by Ms. Newman. ECF No. 1-2 at 4-5. Ms. Lalumiere has described several instances in which she asserts that she felt harassed by Defendants. For example, at the end of the January 5, 2015, meeting with Ms. Berumen and Ms. Newman, Ms. Lalumiere stated that she

"offered to shake [Ms. Newman's] hand," but "[Ms. Newman] refused and gave me angry look [sic]." ECF No. 44, ¶ 8. Ms. Lalumiere stated that in mid-January 2015, "Ms. Newman's demeanor toward me changed drastically and became intimidating and she refused to communicate with me about even basic job tasks that I needed her guidance [sic]." *Id.* ¶ 11.

Ms. Lalumiere met with Defendants Hill and Berumen on January 22, 2015, and, at that meeting, presented a letter to Defendant Hill "describing the harassment and false accusations" that she was experiencing. ECF 44-2 at 5; ECF No. 33-5 at 33. Ms. Lalumiere also provided a copy of her January 22 letter to Ms. Berumen. ECF No. 33-5 at 31-33. In the January 22 letter, Ms. Lalumiere asked the undesignated recipient of the letter to investigate whether Ms. Newman was involved in complaints that Ms. Berumen had received about Ms. Lalumiere's work performance. ECF No. 33-5 at 33. Ms. Lalumiere hoped this investigation would help "remove that cold front looming over [her]." *Id.* The letter does not contain any other examples of false accusations or harassment targeting Ms. Lalumiere.

On one occasion in March 2015, Ms. Lalumiere observed Defendants Berumen and Newman talking together, after which Ms. Lalumiere concluded that Defendants Berumen and Newman gave her "the cold shoulder," although Ms. Lalumiere did not hear the contents of the conversation between Defendants Berumen and Newman. ECF No. 28, ¶ 30; ECF No. 33-1 at 27. On March 28, 2015, the date that Ms. Newman sent Ms. Lalumiere home early, Ms. Lalumiere

asserts that Ms. Newman said, "Mind your own team," "in the voice of kind of a style [sic]." ECF No. 33-1 at 39 (deposition testimony of Ms. Lalumiere); ECF No. 44-2, ¶ 22 (Ms. Lalumiere's written statement recharacterizes the situation, stating that Ms. Newman "immediately yelled at [Ms. Lalumiere] in an intimidating tone of voice").

Ms. Lalumiere alleges that many of the work performance citations she received in January and March of 2015 were the result of false accusations made by Jennifer Newman and other coworkers. ECF No. 44-2 at 3, 4, 5, 9, 10. Ms. Lalumiere appears to consider work performance citations as one aspect of the harassment that she alleges.

*Events of April 19, 2015*

*Accusation of "Pre-Popping" Medications:* On April 19, 2015, the day after the DSHS visit to investigate Ms. Lalumiere's anonymous report about Ms. Odman's infractions, Ms. Lalumiere reported to work at Willow Springs. Shortly after 8:00 a.m. that morning, Ms. Newman responded to a report from the Willow Springs activities assistant, Holly Jorgensen, and observed that Ms. Lalumiere's cart contained at least three medication cups containing medications for different patients. ECF No. 28, ¶¶ 60, 64. The practice of preparing medications for distribution for more than one patient at a time is called "pre-popping," and pre-popping medications is discouraged at Willow Springs. *Id.* ¶ 43. Ms. Lalumiere continues to assert that she did not pre-pop the medications in her cart on April 19,

2015. ECF No. 44-2 at 10-11. However, in her deposition testimony, Ms. Lalumiere stated that she "had a few pre-popped medication [sic]" and agreed that she had pre-poured medications for more than one patient. ECF No. 33-1 at 32.

*Conference Room Events:* Ms. Lalumiere went to the Willow Springs conference room after Ms. Newman took the medications that Ms. Lalumiere had prepared from Ms. Lalumiere's cart. *Id.* ¶ 67; ECF No. 45, ¶ 67. The parties dispute whether Ms. Lalumiere went into the conference room of her own volition or whether Ms. Newman directed Ms. Lalumiere to go to the conference room with her. ECF No. 28, ¶ 67; ECF No. 45, ¶ 67.

It is undisputed that once Ms. Lalumiere was seated in the Willow Springs conference room, Ms. Newman asked Ms. Lalumiere whether she intended to return to work to finish distributing medications, whether she was going home, or whether she was quitting. ECF No. 28, ¶ 69; ECF No. 45, ¶ 69. Ms. Lalumiere sent a text message to Ms. Berumen at 8:25 A.M. stating that the charge nurse, Ms. Newman, was "still harassing" her, the "stress go up [sic] and the blood pressure and it take away [sic] the focus of my mind," and that Ms. Lalumiere thought it would be best to go home. ECF No. 33-6 at 19-20. Ms. Berumen responded that Ms. Lalumiere needed to listen to Ms. Newman and should continue to work her shift. *Id.* at 20; ECF No. 28, ¶ 74.

*Response to Ms. Lalumiere's Health Concerns:* After texting with Ms. Berumen, Ms. Lalumiere indicated to Ms. Newman that she was not feeling well and

was experiencing high blood pressure. ECF No. 33-6 at 26. A Willow Springs nurse took Ms. Lalumiere's blood pressure in the conference room and found Ms. Lalumiere's blood pressure to be high. ECF No. 45, ¶ 70 (Ms. Lalumiere's statement of facts describing the results of the blood pressure assessment as "extremely elevated"); ECF No. 33-3 at 22-23 (deposition of Ms. Newman stating that Ms. Lalumiere's blood pressure was "a little high"). Ms. Newman asked what kind of transportation Ms. Lalumiere would like to use to go to the hospital, and Ms. Lalumiere said, "whatever you can have [sic]." ECF No. 33-6 at 26. Ultimately, Ms. Newman told Ms. Lalumiere that she should drive herself to the hospital. *Id.*

*Departure from Willow Springs:* Ms. Lalumiere was in the conference room on April 19, 2015, for about thirty minutes altogether, after which she counted the medications in her cart as required by Willow Springs procedures and filled out her paid-time-off paperwork before leaving Willow Springs. ECF No. 28, ¶¶ 79, 81; ECF No. 45, ¶¶ 79, 81. Exiting the building, Ms. Lalumiere bumped into Ms. Newman with her purse as Ms. Lalumiere walked past Ms. Newman, and Ms. Newman told Ms. Lalumiere not to touch her or she would have Ms. Lalumiere arrested. ECF No. 33-1 at 42; ECF No. 33-4 at 11. Ms. Lalumiere then sat in her personal vehicle in the Willow Springs parking lot for about twenty-five minutes before leaving the facility to drive home. ECF No. 28, ¶ 84; ECF No. 45, ¶ 84. Ms. Lalumiere did not go to the hospital on April 19, 2015. ECF No. 28, ¶ 81; ECF No. 45, ¶ 81.

*Interactions with Willow Springs After April 19, 2015*

Following the April 19, 2015, incident Ms. Lalumiere spoke with Defendant Hill and asked him to investigate how she had been treated. ECF No. 28, ¶ 86; ECF No. 45, ¶ 86. Defendant Hill passed Ms. Lalumiere's complaints along to Nursing Home Administrator Chris Bosworth, who met with Ms. Lalumiere and her husband on April 23, 2015. ECF No. 28, ¶¶ 87-89. Mr. Bosworth suggested an opportunity for Ms. Lalumiere to work at another nursing facility. *Id.* ¶¶ 98. Ms. Lalumiere declined to take the position offered by Mr. Bosworth. ECF No. 30 at 2. Ms. Lalumiere never returned to Willow Springs after leaving on April 19, 2015. ECF No. 55, ¶ 85.

## DISCUSSION

### A. Legal Standard for Summary Judgment

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing version of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A key purpose of summary judgment 'is to isolate and dispose of factually unsupported claims.'" *Id.* (citing *Celotex*, 477 U.S at 324).

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The Court will not infer evidence that does not exist in the record. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (court will not presume missing facts). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Family Medical Leave Act

Ms. Lalumiere alleges that Defendants prevented her from exercising her rights under the federal Family Medical Leave Act. In her complaint, Ms. Lalumiere asserts three grounds for her Leave Act claims. ECF No. 1-2, at 9. First, Ms. Lalumiere argues that Defendants prevented her from taking protected leave to address her concerns about her high blood pressure on April 19, 2015, in violation of the Act. Second, Ms. Lalumiere argues that Willow Springs retaliated against her for taking medical leave in violation of the Act. Third, Ms. Lalumiere argues that Willow Springs did not return her to her position, or a similar position, upon her return from medical leave. However, in her response to Defendants' Motion for Summary Judgment, Ms. Lalumiere argues only her first claim and does not provide any facts supporting her second or third claims. ECF No. 44 at 10-11. Therefore,

the Court considers Ms. Lalumiere's second and third FMLA claims abandoned and does not address them.

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). The FMLA provides that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

To state a prima facie interference claim under § 2615(a)(1), a plaintiff must establish that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to medical leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *See Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

Ms. Lalumiere claims that Defendants interfered with her FMLA rights by preventing her from taking protected leave on April 19, 2015, when Ms. Lalumiere expressed that she was feeling unwell and was concerned about her blood pressure being high. ECF No. 44 at 10-11. The parties do not dispute that Ms. Lalumiere was eligible for FMLA protections on April 19, 2015, or that Willow Springs was covered by the FMLA. Nor do the parties appear to dispute that Ms. Lalumiere was

entitled to leave under the FMLA on April 19, 2015, or that Ms. Lalumiere provided sufficient notice of her intent to take medical leave on April 19, 2015. The disputed issue is whether Defendants did not allow Ms. Lalumiere to take protected leave to address her health concerns on April 19, 2015.

Defendants argue that because Ms. Lalumiere left work less than thirty minutes after notifying Ms. Berumen of her request to go home, and because Ms. Lalumiere received compensation for her leave on April 19, 2015, Defendants did not interfere with or prevent Ms. Lalumiere from taking protected leave. ECF No. 27, at 12. Ms. Lalumiere does not dispute that she left work around thirty minutes after she first indicated to Defendants Newman and Berumen that she was feeling unwell and wanted to go home. Nor does Ms. Lalumiere dispute that she received payment for the leave that she requested on April 19, 2015.

Ms. Lalumiere contends that Defendants interfered with Ms. Lalumiere's rights under the FMLA because Ms. Newman chose to deny Ms. Lalumiere's request for leave for "several minutes." ECF No. 44, at 10-11. It is undisputed that in the conference room, Ms. Lalumiere did not immediately request leave. ECF No. 33-1 at 34. After stating that she was not feeling well, Ms. Lalumiere expressed her concern that her blood pressure was high and that she desired to go home. *Id.* A nurse took Ms. Lalumiere's blood pressure, and when Ms. Newman observed that Ms. Lalumiere's blood pressure was elevated, Ms. Newman approved Ms.

Lalumiere's request to leave work early. Based on these facts, Ms. Lalumiere has failed to articulate how Defendants denied her FMLA benefits.

Taking all the evidence in the light most favorable to Ms. Lalumiere, the Court finds that Ms. Lalumiere has failed to create a genuine issue of material fact and failed to support an essential element of her FMLA interference claims. Therefore, the Court finds that summary judgment is properly granted as to Ms. Lalumiere's Family Medical Leave Act claims.

### C. Washington State Family Leave Act Claim

Ms. Lalumiere alleges that Defendants prevented her from exercising her rights under the Washington State Family Leave Act (WFLA) by preventing Ms. Lalumiere from taking protected leave immediately on April 19, 2015, and by retaliating against Ms. Lalumiere for taking protected leave. Ms. Lalumiere asserted her federal and state Leave Act claims jointly, alleging that Defendants violated the WFLA on the same three grounds as the Family Medical Leave Act. ECF No. 1, ¶ 4.2; *see supra*.

In relevant part, the WFLA states that "[i]t is unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this chapter." RCW 49.78.300. "The Washington Family Leave Act 'mirrors its federal counterpart and provides that courts are to construe its provisions in a manner consistent with similar provisions of the FMLA.'" *Crawford v. JP Morgan Chase NA*, 983 F.Supp.2d 1264, 1269 (W.D. Wash. 2013) (quoting

*Washburn v. Gymboree Retail Stores, Inc.*, 2012 U.S. Dist. LEXIS 156240, \*21 (W.D. Wash. Oct. 30, 2012)).

The Court analyzed Ms. Lalumiere's WFLA claims under the same standards applied to her FMLA claims and notes that Ms. Lalumiere failed to raise a genuine issue of material fact or support her prima facie case regarding her WFLA claims. For the same reasons that the Court is granting summary judgment on the FMLA claims, specifically that Ms. Lalumiere has failed to demonstrate how Defendants interfered with her FMLA or WFLA rights, the Court finds that summary judgment is properly granted regarding Ms. Lalumiere's WFLA claims.

### D. Intentional Infliction of Emotional Distress Claim

Ms. Lalumiere alleges that Defendants committed the tort of intentional infliction of emotional distress based on the events of April 19, 2015, and on Ms. Lalumiere's claims of verbal harassment and being falsely accused of workplace infractions in January and March of 2015.

In order to succeed in a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must prove: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* "[M]ere insults, indignities, threats, annoyances, petty oppressions or other trivialities" will not be sufficient to

establish an IIED claim. *Strong v. Terrell*, 195 P.3d 977, 982 (Wash. Ct. App. 2008).

In *Strong*, the plaintiff's supervisor repeatedly verbally harassed plaintiff during a period of over two years between 1999 and 2002. *Id.* at 979-80.

> He pointedly told "blonde jokes," and he made fun of her by ridiculing her with remarks about her personal life, including disparaging the house she purchased and her husband's employment, and telling her that her son was going to find out that she was a "bum" mother because she had placed him in therapy. Strong asserted that Terrell's behavior caused her to vomit and to have anxiety attacks, depression, and heart palpitations.

*Id.* The Washington Court of Appeals agreed with the trial court's finding that the supervisor's harassment did not rise to the level of outrageous and extreme conduct and affirmed the trial court's grant of summary judgment for defense on Strong's intentional infliction of emotional distress claim. *Id.* at 982.

Ms. Lalumiere attempts to distinguish *Strong*, arguing that the employer reprimanded and "eventually terminated" the supervisor after the plaintiff complained of the supervisor's conduct. ECF No. 44, at 3. Although a follow-up investigation in *Strong* did lead to the recommendation that the supervisor should be terminated, the employer merely recommended that the supervisor "take some additional management training classes to improve his management style," and the supervisor resigned from his position nearly two years after the plaintiff's initial complaint. *Strong*, 195 P.3d at 980. *Strong* demonstrates the very high bar that

1  plaintiffs are required to meet to succeed in intentional infliction of emotional

2  distress claims.

3       The parties in the present matter dispute whether Defendants' conduct rises to

4  the level of outrageous and extreme.  Defendants argue that Ms. Lalumiere bases her

5  intentional infliction of emotional distress claims on the April 19, 2015, accusation

6  that Ms. Lalumiere pre-popped patient medications, subsequent interactions in the

7  Willow Springs conference room, and Defendants' response to Ms. Lalumiere's

8  concern about her blood pressure.  ECF No. 27, at 6.  Defendants contend that Ms.

9  Lalumiere has not created a genuine issue of material fact or supported her prima

10 facie case regarding whether Defendants' treatment of Ms. Lalumiere on April 19,

11 2015, was outrageous or extreme.  *Id.*

12      Ms. Lalumiere asserts that on April 19, 2015, Defendants denied Ms.

13 Lalumiere medical treatment and held her against her will in a room when she was

14 requesting to be taken to the hospital.  ECF No. 1-2, at 10.  Although Ms. Newman

15 did not provide an ambulance for Ms. Lalumiere, a Willow Springs nurse took Ms.

16 Lalumiere's blood pressure.  ECF No. 33-6 at 26.  Ms. Lalumiere acknowledges that

17 she went to the conference room of her own volition, had a cell phone in her hand

18 which she used to text Ms. Berumen during the time that she was in the conference

19 room, and did not go to the hospital or seek medical treatment for four days after the

20 events of April 19, 2015.  *See* ECF No. 33-1 at 33; ECF No. 28, ¶ 81.  The Court

21

concludes that Ms. Lalumiere has not created a genuine issue of material fact as to whether Defendants acted in an outrageous or extreme manner on April 19, 2015.

Ms. Lalumiere also alleges that Defendants' conduct constituted intentional infliction of emotional distress based on Ms. Lalumiere's assertion that she repeatedly experienced harassment and false accusations from Defendants in the months preceding the events of April 19, 2015. ECF No. 44, at 3. Without offering evidentiary support, Ms. Lalumiere asserts that the work performance accusations against her were false. She also noted her disagreement with the citations that she received from her Willow Springs supervisors. *See, e.g.*, ECF No. 33-5 at 29 (Willow Springs Corrective Action Report dated January 15, 2015, showing that Ms. Lalumiere checked the box next to "I disagree with the Company's statement for the following reason," accompanied by her handwritten comments).

However, Ms. Berumen and Ms. Newman were not the only Willow Springs coworkers who reported Ms. Lalumiere for work performance errors. A number of other Willow Springs employees also noted that Ms. Lalumiere behaved unprofessionally at times between January and April of 2015. ECF No. 33-5 at 35-39; ECF No. 33-1 at 39 (acknowledging a March 28, 2015, incident report filed by coworker Jody Shively); ECF 33-4 at 10 (deposition of Ms. Newman noting that Holly Jorgensen observed Ms. Lalumiere with pre-popped medications on April 19, 2015). Ms. Lalumiere's belief and her conclusory allegations, without evidentiary

1  support, that Defendants falsely accused her of work performance issues are

2  insufficient to raise a genuine issue of material fact regarding Defendants' conduct.

3      Similarly, Ms. Lalumiere has offered only a few incidents to support her claim

4  of harassment. *See infra.* Ms. Lalumiere makes conclusory statements that Ms.

5  Newman verbally harassed and intimidated her. She describes interactions where

6  Ms. Newman refused to shake her hand or gave her "an angry look," or where

7  Defendants Berumen and Newman gave her "the cold shoulder." Ms. Lalumiere

8  also asserts, without support, that Defendants asked her to resign on March 30, 2015.

9  ECF No. 33 at 39.

10     To support her IIED claims against Defendants, Ms. Lalumiere also points to

11 Willow Springs Activities Assistant Holly Jorgensen's report to DSHS. ECF No. 44

12 at 3-4; ECF No. 44-2, ¶ 31. Ms. Jorgensen is not named as a defendant in this case.

13 She filed a report with DSHS against Ms. Lalumiere on April 22, 2015. ECF No.

14 44-2 at 13. Ms. Jorgensen stated that she reported Ms. Lalumiere to DSHS as a

15 result of manipulation by Ms. Newman. ECF No. 44 at 3-4; ECF 44-2 at 23. Ms.

16 Jorgensen stated in an email dated March 12, 2017, that "[Ms. Newman] would

17 make a point to put a negative spin on the way [Ms. Lalumiere] worked and she was

18 successful in swaying my opinion as I did not have an understanding of how things

19 worked in their department." *Id.* Ms. Lalumiere states that "DSHS investigated

20 [Ms. Jorgensen's] allegations and they were unfounded." ECF No. 44-2 at 13.

21

While Ms. Newman may have influenced Ms. Jorgensen, Ms. Jorgensen made the report to DSHS herself. Furthermore, Ms. Lalumiere acknowledges that she experienced no adverse effects as a result of Ms. Jorgensen's report and does not argue that the DSHS report caused her severe emotional distress. *Id.* Ms. Lalumiere's claims of Defendants' harassment and false accusations, without additional evidentiary support, fail to raise a genuine issue of material fact regarding whether Defendants' alleged conduct was extreme and outrageous.

Viewing these facts in the light most favorable to Ms. Lalumiere, the Court finds that Ms. Lalumiere has not created a genuine issue of material fact or support of her prima facie case regarding the outrageousness of Defendants' conduct on or before April 19, 2015. Therefore, the Court finds that summary judgment is proper as to Ms. Lalumiere's claims of intentional infliction of emotional distress.

### E. Whistleblower Retaliation Claim

Ms. Lalumiere alleges that Defendants retaliated against her in violation of the Washington Law Against Discrimination (WLAD), RCW 49.60.210. ECF No. 1-2, at 9. Ms. Lalumiere asserts that Defendants undertook adverse employment action against Ms. Lalumiere after she made her report to DSHS on April 2, 2015, or in the alternative, after Ms. Lalumiere reported her coworker's infractions to her supervisors in January and March of 2015. ECF No. 44, at 6-7.

The WLAD states that it is "an unfair practice for any employer . . . or other person to discharge, expel, or otherwise discriminate against any person because he

or she has opposed any practice forbidden by *this chapter*," Chapter 49.60. RCW 49.60.210(1) (emphasis added). RCW Chapter 49.60 prohibits discrimination on the basis of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability.

To establish a prima facie case of retaliation under WLAD, a plaintiff must show that: (1) she engaged in statutorily protected activity, (2) her employer took an adverse employment action against her, and (3) there is a causal link between the activity and the adverse action. *Alonso v. Qwest Communications Co.*, 315 P.3d 610, 620 (Wash. Ct. App. 2013). An employee engages in activity protected by the Washington Law Against Discrimination only when she "opposes employment practices forbidden by antidiscrimination law or other practices that [s]he reasonably believed to be discriminatory." *Id.* "[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." *Short v. Battle Ground School District*, 279 P.3d 902, 912 (Wash. Ct. App. 2012) (quoting *Gifford v. Atchison, T. & S.F.R. Co.*, 685 F.2d 1149, 1157 (9th Cir. 1982)).

On April 2, 2015, Ms. Lalumiere anonymously reported her coworker, Dianne Odman, to DSHS for failing to timely distribute patient medications in violation of nursing home regulations under RCW Chapter 18.51. ECF No. 44-2, ¶ 26. Ms.

Lalumiere previously had reported her concerns about Ms. Odman to Ms. Berumen orally on January 12, 2015, and in writing on March 20, 2015. ECF No. 33-1 at 19; ECF No. 33-6 at 2. Because Ms. Lalumiere's whistleblowing involved violations of nursing home regulations rather than civil rights protections, Defendants contend that RCW 49.60.210 is inapplicable to Ms. Lalumiere's whistleblower retaliation claims and argue that Ms. Lalumiere has abandoned her claim. ECF No. 27 at 9.

In response, Ms. Lalumiere argues that she engaged in activity statutorily protected under Washington law when she reported the nursing home regulation violations and when she alleged that Ms. Newman was treating her unfairly due to her reports. ECF No. 44, at 6-7. She contends that conduct protected by RCW 18.51.220 should be subject to the same prima facie case analysis as conduct protected by RCW 49.60.210. *Id.* RCW 18.51.220 provides that "No licensee shall discriminate or retaliate in any manner against a patient or employee in its nursing home on the basis or for the reason that such patient or employee . . . has initiated or participated in any proceeding specified in this chapter." RCW Chapter 18.51 provides regulations for nursing home standards. Regardless of which statute is applied, the plaintiff must establish that adverse action occurred in order to prove retaliation.

The parties dispute the factual issue of whether Defendants took any adverse action against Ms. Lalumiere. The adverse actions Ms. Lalumiere alleges Defendants took against her are, first, that she was constructively discharged due to

the creation of intolerable working conditions and, second, that she was not given a promised raise. ECF No. 44 at 7.

The parties also dispute whether Ms. Lalumiere has established a causal link between Ms. Lalumiere's reports and the alleged adverse actions. Defendants argue that, even if Ms. Lalumiere can demonstrate that Defendants undertook an adverse action against her, Ms. Lalumiere has not shown the required causal connection between her reports and the alleged adverse actions. ECF No. 27 at 11.

"The Ninth Circuit has held that causation 'may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" Ellorin v. Applied Finishing, Inc., 996 F. Supp. 2d 1070, 1090 (W.D. Wa. 2014) (quoting *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987)). To establish causation on the basis of circumstantial evidence of an employer's knowledge of protected activity and an adverse employment action, "the temporal proximity must be very close." *Clark County School District v. Breedon*, 532 U.S. 268, 273 (2001).

*Constructive Discharge Adverse Action and Causation Arguments*

Ms. Lalumiere argues that she was constructively discharged in two of her claims. First, Ms. Lalumiere argues that her alleged constructive discharge is an adverse action for the purposes of proving the prima facie case for whistleblower

retaliation. Second, Ms. Lalumiere argues that her alleged constructive discharge may be used to prove her wrongful discharge in violation of public policy.

"Constructive discharge occurs where an employer deliberately makes an employee's working conditions intolerable, thereby forcing the employee to resign." *Sneed v. Barna*, 912 P.2d 1035, 1039 (Wash. Ct. App. 1996). "In order to survive summary judgment on a constructive discharge claim, a plaintiff must show there are triable issues of fact as to whether a reasonable person in [her] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions." *Ogden*, 2016 U.S. Dist. LEXIS 44076, at *72 (quoting *Hardage v. CBS Broadcasting Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005), *amended on denial of reh'g*, 433 F.3d 672, *amended on reh'g of denial*, 436 F.3d 1050) (internal quotations omitted). At the summary judgment stage, the Court recognizes that

> [w]hether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury. In general, however, a single isolated incident is insufficient as a matter of law to support a finding of constructive discharge. Thus, a plaintiff alleging a constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment.

*Schnidriq v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411-12 (9th Cir. 1996).

In support of the alleged adverse action of constructive discharge, Ms. Lalumiere asserts that the "series of harassment, false accusations[,] and retaliation for making reports of medical errors" that Ms. Lalumiere claims that she

experienced at Willow Springs, as well as Defendants' failure to provide her desired level of medical attention on April 19, 2015, led her to resign from her position. ECF No. 44 at 7. However, Ms. Lalumiere's disagreeing with the citations she received from supervisors regarding her work performance, feeling offended by Ms. Newman's lack of communication, and feeling that Defendants did not respond as Ms. Lalumiere hoped they would to her medical issues on April 19, 2015, fail to create genuine issues of material fact regarding the "intolerable" nature of her work. Even taking all of Ms. Lalumiere's allegations as valid, the record does not show any "aggravating circumstances." Defendants met with Ms. Lalumiere multiple times to try to resolve the existing interpersonal and performance issues and kept her on the work rotation even after she left Willow Springs on April 19, 2015.

Ms. Lalumiere's assertions rely upon the same factual underpinnings as her claims under FMLA, WFLA, and intentional infliction of emotional distress. The Court already has found that Ms. Lalumiere has failed to support those claims with sufficient evidence and finds insufficient evidence to support the alleged constructive discharge as an adverse action in Ms. Lalumiere's retaliation claim. Furthermore, in her pleadings, Ms. Lalumiere already dismissed her constructive discharge due to hostile work environment claim, thus conceding lack of support for that claim. *See infra.*

To show that the necessary element of causation exists, Ms. Lalumiere asserts that Defendants knew of her reports and, consequently, engaged in the conduct

which led to Ms. Lalumiere's alleged constructive discharge. Without supporting evidence, Ms. Lalumiere alleges that Defendants knew that the DSHS investigation on April 18, 2015, was the result of Ms. Lalumiere's report to DSHS. Ms. Lalumiere also asserts that Ms. Berumen knew of her anonymous tip to DSHS on April 2, 2015. ECF No. 44 at 9. However, Ms. Lalumiere's assertions that Ms. Berumen had knowledge of her report to DSHS are not supported by evidence. *See, e.g.*, ECF No. 33 at 24 (deposition of Ms. Berumen, stating that she thought it was a possibility that Ms. Lalumiere's complaint prompted the DSHS investigation on April 18, 2015). Ms. Lalumiere also asserted at oral argument that Ms. Newman knew of Ms. Lalumiere's reports to Ms. Berumen and to DSHS. Ms. Lalumiere has offered no support for this assertion and, in her deposition testimony, acknowledged that she did not know whether Ms. Newman knew of Ms. Lalumiere's January and March reports to Ms. Berumen. ECF No. 33-1 at 20, 26.

Ms. Lalumiere argues a series of circumstantial inferences to support the creation of a genuine issue of material fact regarding causation in her whistleblower retaliation claim. First, Ms. Lalumiere argues that because Ms. Berumen knew of the January and March reports against Ms. Odman, Ms. Newman also must have known about them. However, she does not explain why that would be the case.

Second, Ms. Lalumiere argues that because Defendants Berumen knew and Newman may have known about the January and March reports, they would have

known that the April 18 DSHS investigation was the result of a report made by Ms. Lalumiere. Again, she does not explain why that would be the case.

Third, because Ms. Lalumiere argues that they both would have known that Ms. Lalumiere had made these reports against Ms. Odman, Ms. Lalumiere concludes that knowledge caused Ms. Berumen and Ms. Newman to retaliate against Ms. Lalumiere by falsely accusing her of misconduct and treating her unkindly prior to and on April 19, 2015, leading her to feel harassed and causing her to resign. But, she does not offer a clear nexus to arrive at that conclusion.

Ms. Lalumiere's reports and Defendants' alleged actions occur in relatively close proximity to one another. However, the Court finds that Ms. Lalumiere has not created a genuine issue of material fact or supported her prima facie case that she suffered an adverse action by being constructively discharged.

*Wage Increase Denial Adverse Action and Causation Arguments*

To prove that Defendants acted adversely in response to her reports, Ms. Lalumiere alternatively asserts that on March 11, 2015, Ms. Berumen "denied [Ms. Lalumiere's] twenty-five cent raise of January 9, 2015." ECF No. 44 at 8; ECF No. 44-2 at 6. The denial of a promised raise may be an adverse action, but Ms. Lalumiere has not presented any evidence to support her claim to this wage increase and has thus failed to create a genuine issue of material fact as to whether her failure to receive the alleged raise constitutes an adverse action.

1     The only arguments that Ms. Lalumiere puts forth to support the element of

2  causation with regards to her alleged wage increase denial are that Defendants knew

3  about Ms. Lalumiere's reports about Ms. Odman and that Ms. Newman issued

4  citations for Ms. Lalumiere's poor work performance multiple times.  ECF No. 44 at

5  9.  Ms. Lalumiere alleges that Defendants promised her the wage increase on

6  January 9, 2015.  ECF No. 44 at 8.  Ms. Lalumiere also asserts that Ms. Berumen

7  told Ms. Lalumiere that the alleged raise depended on Ms. Lalumiere's getting along

8  with her coworkers.  ECF No. 33-1 at 19.

9     The evidence shows that Ms. Berumen had knowledge of Ms. Lalumiere's

10  January 12, 2015, report regarding Ms. Odman's infractions because Ms. Lalumiere

11  made the report to Ms. Berumen.  Two months elapsed between Ms. Lalumiere's

12  January 12 report and an incident on March 11 during which Ms. Lalumiere alleges

13  that Ms. Berumen denied the raise.  ECF No. 44 at 8.  Therefore, even if the Court

14  assumes that Ms. Lalumiere was entitled to the alleged raise, which is not supported

15  by any evidence other than Ms. Lalumiere's assertion, the temporal proximity

16  supporting an adverse action is missing.

17     Because Ms. Lalumiere has not presented evidence to raise any genuine issue

18  of fact or to support that Defendants' actions were adverse, the Court finds that Ms.

19  Lalumiere has failed to support an essential element in her prima facie case for

20  whistleblower retaliation.  Therefore, summary judgment is proper as to her

21  whistleblower retaliation claims.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 29

## F. Wrongful Termination by Constructive Discharge in Violation of Public Policy Claim

Ms. Lalumiere alleges that Defendants wrongfully terminated her employment at Willow Springs in violation of public policy. A plaintiff must actually be discharged to prevail on a claim of wrongful discharge in violation of public policy. *Briggs v. Nova Services*, 213 P.3d 910, 916 (Wash. 2009) (affirming summary judgment to employer on wrongful discharge claim where plaintiff was not discharged). "In an action for wrongful discharge, the discharge may be either express or constructive." *Blumhoff v. Tukwila School District No. 406*, 3008 Wash. App. LEXIS 2704 (Wash. Ct. App. Nov. 17, 2008).

There is no dispute that Defendants did not expressly terminate Ms. Lalumiere's employment at Willow Springs. Instead, Ms. Lalumiere "actually did resign" from her position. ECF No. 44 at 11. However, she is alleging that she was constructively discharged, relying on the same allegations that she alleged for her IIED and retaliation claims. ECF No. 44 at 11 (incorporating the arguments made in her whistleblower retaliation claim, which in turn relies upon the same "series of harassment, false accusations, and retaliation," ECF No. 44 at 7, that Ms. Lalumiere argues in her IIED claim, *id.* at 3). Ms. Lalumiere asserts that Defendants' alleged retaliatory conduct against Ms. Lalumiere for whistleblowing, as well as Defendants' failure to provide her desired level of medical attention on April 19, 2015, led Ms. Lalumiere to resign. ECF No. 44 at 11.

The Court previously considered Ms. Lalumiere's allegations regarding constructive discharge as part of her whistleblower retaliation claims and found summary judgment proper because Ms. Lalumiere failed to support her claims with evidence sufficient to create a genuine issue of material fact or satisfy her prima facie case. Accordingly, the Court finds that Ms. Lalumiere has not established a genuine issue of material fact as to the essential element of whether she was constructively discharged from Willow Springs in violation of public policy.

Even if Ms. Lalumiere could sustain her constructive discharge allegations, she also must demonstrate facts to prove the prima facie case for wrongful termination in violation of public policy. To prevail in a public policy tort case, the plaintiff must show (1) clarity, (2) jeopardy, (3) causation, and (4) the absence of justification. *Gardner v. Loomis Armored*, 913 P.2d 377 (Wash. 1996). "'Clarity' is shown by the existence of a clear public policy." *Truss v. Foss Home & Village*, 208 Fed.Appx. 590, 591 (9th Cir. 2006) (citing *Gardner*, 913 P.2d at 382). A plaintiff shows "jeopardy" if "the employee's discharge jeopardizes that public policy." *Gardner*, 913 P.2d at 382. The plaintiff must prove "that the public-policy-linked conduct caused the dismissal." *Id.* Finally, the defendant "must not be able to offer an overriding justification for the dismissal." *Id.*

Ms. Lalumiere has not expressly argued any of the prima facie elements of her wrongful termination in violation of public policy claim. Instead, she appears to rely on the same arguments made in support of her whistleblower retaliation and

intentional infliction of emotional distress claims, and the Court has found those claims properly dismissed on summary judgment. The Court will not presume facts or arguments not in the record. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (court will not presume missing facts).

Considering all the evidence in the light most favorable to Ms. Lalumiere, her allegations are insufficient to sustain a claim for wrongful termination by constructive discharge past the summary judgment stage. The Court finds summary judgment proper and dismisses Ms. Lalumiere's wrongful termination by constructive discharge in violation of public policy claims.

### G. False Imprisonment Claim

Ms. Lalumiere alleges that Defendants falsely imprisoned her by confining her to the Willow Springs conference room on April 19, 2015. In order to succeed in a claim of false imprisonment, a plaintiff must show that the liberty of her person was restrained. *Moore v. Pay'N Save Corp.*, 581 P.2d 159, 162-63 (Wash. Ct. App. 1978). The restraint must be accomplished by (1) physical force; (2) threat of physical force; or (3) conduct reasonably implying that physical force will be used. *Id.*

Defendants argue that Ms. Lalumiere went to the conference room under her own power, that Ms. Newman asked Ms. Lalumiere repeatedly to leave the conference room to return to work, and that no physical restraint was ever used. ECF No. 54-3 at 7. Ms. Lalumiere admits that Ms. Newman never used physical

1   force or the threat of physical force to keep Ms. Lalumiere in the conference room.

2   ECF No. 33-1 at 35.  Ms. Lalumiere has stated that Ms. Newman demanded that Ms.

3   Lalumiere leave the conference room to return to the floor and distribute patient

4   medications.  *Id.* at 34.  However, Ms. Lalumiere asserts that due to her physical

5   condition, which she refers to as "debilitated," Ms. Newman falsely imprisoned Ms.

6   Lalumiere when Ms. Newman did not help Ms. Lalumiere go to the hospital.  ECF

7   No. 44 at 5.  During oral argument, Ms. Lalumiere argued that, for a period of about

8   five to ten minutes, she felt that she was not free to leave the conference room.

9        The evidence, viewed in the light most favorable to Ms. Lalumiere, does not

10  create a genuine issue of material fact as to her false imprisonment claims.  She

11  acknowledges that Ms. Newman made no threat of physical force, although Ms.

12  Lalumiere asserts that she felt Ms. Newman wanted to harm her and had "evil eyes."

13  ECF No. 33-1 at 36.  Ms. Lalumiere had her cell phone with her in the conference

14  room and texted Ms. Berumen, but did not call an ambulance herself, despite her

15  concerns about her high blood pressure.  *Id.*  Ms. Lalumiere states that her hands

16  were "trembling" and "sweaty" to explain why she was unable to call 911, *id.*, yet

17  she was able to send a lengthy text message to Ms. Berumen.  *Id.* at 34; ECF No. 33-

18  6 at 19-21.  Finally, Ms. Lalumiere acknowledges that Ms. Newman repeatedly told

19  Ms. Lalumiere that she should leave the conference room to continue distributing

20  patient medications.

21

1   Therefore, the Court finds that the evidence is insufficient to raise a genuine

2   issue of material fact or satisfy the prima facie elements to support a claim of false

3   imprisonment.  The Court dismisses Ms. Lalumiere's false imprisonment claims.

4   ### H. Negligent Hiring Claims

5   Ms. Lalumiere alleges that Defendant Willow Springs negligently hired

6   Defendant Hill.  To prove negligent hiring, a plaintiff must show that (1) Willow

7   Springs knew or, in the exercise of ordinary care, should have known of its

8   employee Aaron Hill's unfitness at the time of hiring; and (2) the negligently hired

9   employee proximately caused injuries to Plaintiff.  *Carlsen v. Wackenhut Corp.*, 868

10  P.2d 882, 886 (Wash. Ct. App. 1994).

11  Ms. Lalumiere claims that Defendant Hill did not possess the proper training

12  or license to serve as a nursing home administrator.  ECF No. 44 at 12.  Ms.

13  Lalumiere asserts that she believed Defendant Hill to be the acting Administrator of

14  Willow Springs and that she expected Defendant Hill, in that capacity, to respond to

15  any complaints she raised.  ECF No. 44 at 12; ECF No. 33-1 at 47.  Ms. Lalumiere

16  claims that Mr. Hill "was conducting his job illegally and unable to handle [her]

17  complaints."  ECF No. 44-2, ¶ 4.  However, Ms. Lalumiere also made an accusation

18  of unfitness regarding Mr. Bosworth, a licensed nursing home administrator, when

19  his actions in response to her complaints were unsatisfactory to Ms. Lalumiere.  ECF

20  No. 33 at 47 (deposition of Ms. Lalumiere, stating that both Defendant Hill and Mr.

21

Bosworth were "unqualified" because they did not perform the investigations she expected or hoped they would).

Defendants do not dispute the fact that Defendant Hill was not licensed to be a nursing home administrator, but contend that Defendant Hill acted as an Administrator in Training and had 2,000 hours of experience as an Administrator in Training before working at Willow Springs. ECF No. 32 at 2. Randy Hyatt, a licensed nursing home administrator and the Chief Financial Officer of Hyatt Family Facilities which operates Willow Springs, stated that Defendant Hill was hired as an Administrator in Training in February 2013. *Id.* The Board of Nursing Home Administrators performed an investigation of Defendant Hill and closed the case against him without disciplinary action because the evidence did not support a violation. ECF No. 32-1 at 2 (letter to Mr. Hyatt regarding investigation of Defendant Hill).

Ms. Lalumiere met with Defendant Hill to discuss her issues on January 22, 2015, and felt that he did not respond to her complaint. *Id.* ¶ 12. On March 30, 2015, Ms. Lalumiere met with Defendants Hill, Berumen, and Newman to address Ms. Lalumiere's concerns about Ms. Odman's alleged errors and Ms. Lalumiere's work performance. *Id.* ¶¶ 24-25. Ms. Lalumiere felt that "[t]he meeting ended without [Ms. Lalumiere] being able to express [her] concerns and without a plan of action." *Id.* ¶ 25. When Ms. Lalumiere communicated with Defendant Hill after

April 19, 2015, he directed her to Administrator Chris Bosworth, who met with her and attempted to help address some of her concerns. ECF No. 28, ¶ 87.

Ms. Lalumiere asserts that she was injured by Defendant Hill, alleging that if Defendant Hill was licensed, he would have acted differently by performing the investigation that she requested or responding to her complaints. ECF No. 44 at 12. She claims Defendant Hill could have prevented the retaliation and constructive discharge that Ms. Lalumiere alleged and that the Court already has dismissed. *Id.* Ms. Lalumiere asserts that Mr. Hill's lack of qualification caused Ms. Lalumiere humiliation, but she fails to provide supporting evidence of any actual injury. ECF No. 33 at 47.

The Court finds that Ms. Lalumiere has not provided sufficient facts to create a genuine issue of material fact or to support her prima facie case regarding her negligent hiring claim involving Defendant Hill. Therefore, summary judgment is proper as to Ms. Lalumiere's negligent hiring claim.

### I. *Constructive Discharge Due to Hostile Work Environment Claim*

Ms. Lalumiere concedes and dismisses this claim. ECF No. 44 at 11.

### J. *Defamation Claim*

Ms. Lalumiere concedes and dismisses this claim. ECF No. 44 at 11.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 27**, is **GRANTED**.

2. All of Plaintiff's claims against all Defendants are dismissed with prejudice.

3. Judgment shall be entered for Defendants.

4. All other pending motions are terminated.

The District Court Clerk is hereby directed to enter this Order, enter Judgment as noted above, provide copies to all counsel, and **close this case**.

**DATED** November 7, 2017.


_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge